## SHUBIN et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5095.

Circuit Court of Appeals, Third Circuit.
Sept. 19, 1933.

Theodore B. Benson, of Washington, D. C., for petitioners.

Paul D. Miller, of Washington, D. C., and Sewall Key and William H. Riley, Jr., Sp. Assts. to Atty. Gen., for respondent.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is a petition to review an order of redetermination of the Board of Tax Appeals, sustaining the determination of the Commissioner of Internal Revenue that there is a deficiency in the income tax for 1927 of the Reliable Coal Company, a dissolved corporation, for whose obligations the petitioners, Max Shubin and his wife, Sara, are responsible.

In 1921 Max Shubin purchased approximately two and one-third acres of land for $21,000. He formed a corporation called the Reliable Coal Company for the purpose of engaging in the business of selling coal. He transferred the land to the company in consideration of $1 and the assumption of a $20,000 mortgage then existing on the property. The coal company sold about 80 per cent. of the land for $19,000, and retained the rest upon which it constructed an office build-

ing and garage, and made other improvements, at the cost of $23,834.72.

The coal company did an active business with annual profits of from $10,000 to $12,000. In 1927 it had approximately 5,000 customers.

In April, 1927, the corporation sold its business to one Silverman for $95,000, payable as follows: $5,000 in cash upon signing the agreement; $10,000 at its settlement; a first mortgage for $50,000 on the business and property for five years; a second mortgage for $30,000 to a third party to be secured by the seller.

The cash payments of $5,000 and $10,000 were made, and the first mortgage was executed by Silverman. Shubin arranged with a building and loan association for the second mortgage, which Silverman gave to the association. At the time the cash payments were made, the coal company received $30,000 representing the proceeds of the loan secured by the second mortgage.

Apparently, the building and loan association would not loan $30,000 to Silverman on a second mortgage without substantial collateral. It required both the coal company and Shubin to give bonds in the sum of $30,000 as collateral for the mortgage. It also obtained securities from Shubin of a value of $12,000 and a letter of guaranty for $10,000 from Silverman's father.

After the sale to Silverman, the coal company was dissolved, and Shubin assumed all of its liabilities. The building and loan association released the coal company's bond retaining Shubin's bond for $30,000.

Silverman proved unable to conduct the coal business successfully, and on January 1, 1929, he turned it over to his father, who subsequently became a bankrupt.

In computing the tax liability of the coal company for the year 1927, the Commissioner of Internal Revenue determined that it realized a profit of $63,875.55 from the sale of the business to Silverman. This was arrived at by deducting from the selling price of $95,000, the cost of the assets and the expenses of the sale, the sums of $24,870.45 and $6,254, respectively. The Commissioner also determined that the transaction was not an installment sale within the meaning of section 212 (d) of the Revenue Act of 1926 (26 USCA § 953 (d), since the amount of cash received as initial payments upon the sale of the property was in excess of 25 per centum of the selling price. The Board of Tax Appeals agreed with the Commissioner.

■ The petitioners contend that the proceeds of the second mortgage obtained from the building and loan association were not a payment in cash of part of the purchase price of the property, but a loan made on the basis of the security furnished by the coal company. They say that the only initial payments were the two payments of $15,000 in cash that Silverman paid to the coal company.

Section 212 (d) of the Revenue Act of 1926 provides that, in the case of a casual sale of personal property for more than $1,000 or of a sale of real property, "if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations * * * be returned on the basis and in the manner above prescribed [that is, the installment plan]. * * * As used in this subdivision the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

The record does not contain a copy of the bond, but the facts show that the liability of the coal company was secondary and subordinate to that of Silverman, the mortgagor. The Board considered the transaction to be similar to one in which a seller receives promissory notes from the buyer in payment for property, and thereafter the seller indorses and sells them. Grace T. Mytinger v. Com'r, 4 B. T. A. 896; Packard Cleveland Motor Company v. Com'r, 14 B. T. A. 118. However true that may be, the result that the Board reached is correct. The coal company received cash, to be used as it saw fit, in exchange for its property. It was obligated to repay the money only if Silverman failed primarily. The building and loan association took the mortgage from Silverman and the coal company the money for which the mortgage was given.

■ The petitioners also contend that the Board erred in determining that the fair market value of the first mortgage on the property was $50,000 or its face value.

Section 202 of the Revenue Act of 1926 (26 USCA § 933) provides that, in the case of an ordinary sale, the sum realized therefrom shall be the sum in cash plus the fair market value of any property received. The Commissioner decided that the fair market value of the mortgage was equal to its face value. His decision was approved by the Board on the ground that the petitioners' evidence was not sufficient to overcome the prima facie correctness of the Commissioner's finding.

The record does not show any substantial evidence that the value was arbitrary. The mortgage was part of the purchase price for a profitable and growing business. But Shubin was of the opinion that the property was worth only $30,000, although he had refused offers of that amount and stated that it was worth $60,000 and "that was the figure he wanted for it." A real estate agent gave an opinion based on the offers that he obtained, taking it for granted that the prospective purchasers had looked into the value themselves. Finally, Shubin testified that some time, whether in 1927 or not he could not say, he unsuccessfully tried to dispose of the mortgage at a discount and attempted to use it as collateral for a loan. He was unable to dispose of it or obtain a loan for more than $20,000.

The Board of Tax Appeals is not bound by such unreliable evidence. The burden is on the petitioners to show the incorrectness of the determination. The valuation placed on the mortgage by the Commissioner was that assigned to it by the parties in an apparently bona fide sale of a valuable business.

The petition is denied, and the order of redetermination of the Board is affirmed.