DORIC APARTMENT CO. v. COMMIS-
SIONER OF INTERNAL REVENUE.

No. 7373.

Circuit Court of Appeals, Sixth Circuit.

Feb. 8, 1938.

Nathan Kahn and E. J. Wells, both of Louisville, Ky., for petitioner.

Helen Carloss, of Washington, D. C. (Robert H. Jackson, Asst. Atty. Gen., and J. Louis Monarch and Harry Marselli, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before MOORMAN and SIMONS, Circuit Judges, and HAMILTON, District Judge.

SIMONS, Circuit Judge.

The decision of the Board of Tax Appeals sought to be reviewed is the redetermination of a deficiency in petitioner's income taxes for the year 1924 resulting from an asserted undervaluation of the fair market value of second mortgage notes received by the petitioner in the disposition of apartment house property in Louisville. The sole question within our power of review is whether there was substantial evidence to sustain the findings of the Board.

The applicable statute is the Revenue Act of 1924, § 202(a), 43 Stat. 255, which provides that "gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided," and of which section 202 (c) recites that, "The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

The petitioning taxpayer is a Kentucky corporation organized in 1922 with outstanding capital stock of 2,003 shares, each

of the par value of $100. It purchased land in Louisville upon which it built the Willow Terrace Apartments, at a total cost to it in land, building, equipment, and financing, of $490,411.38. In 1924 it sold the apartment house with its furniture and equipment to the Matz Realty Company, a corporation, of which Samuel L. Matz was president and principal stockholder. The consideration received consisted of $175,000 in cash, the assumption by the purchaser of first mortgage bonds in the principal sum of $225,000, and 147 notes of the face value of $312,500, executed by the purchaser and Samuel L. Matz individually and secured by a mortgage lien upon the property subject only to the first mortgage. In its income tax return for the year 1924 the taxpayer returned as the fair market value of the second mortgage notes the sum of $93,750. The respondent in asserting deficiency assigned to them a fair value of $265,625, being 85 per cent. of their face value. He increased the net income by the amount of $171,875, determined a deficiency based upon such increase, and concluding that a sale of the second mortgage notes made by the taxpayer in 1924 was colorable and intended to mislead him in the proper adjustment of net profit, imposed a penalty of 50 per cent. The Board of Tax Appeals upon consideration of the evidence, assigned to the second mortgage notes a fair value of $187,500, being 60 per cent. of their face value, redetermined the deficiency, and found the evidence insufficient to sustain the burden of proof cast by the statute upon the Commissioner that the deficiency was due to fraud or intent to evade the tax.

The rule is, of course, well settled that findings of value are findings of fact and will not be disturbed upon appeal if there is any substantial evidence to support them. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; Marshall v. Commissioner, 6 Cir., 57 F.2d 633, certiorari denied 287 U.S. 621, 53 S.Ct. 20, 77 L.Ed. 539; Rubel v. Commissioner, 6 Cir., 74 F.2d 27; Tracy v. Commissioner, 6 Cir., 53 F.2d 575; Commissioner v. Isaac Winkler & Bro. Co., 6 Cir., 53 F.2d 580. Our sole concern is therefore with the question whether the Board's finding of value is supported by substantial evidence. In addition to the opinion of experts, who valued the second mortgage notes at from 66⅔ per cent. to 80 per cent. of their face value, the Board had before it for consideration the terms of sale of the property, which disclosed an equity therein of the purchaser represented by a cash payment of $175,000 in addition to the notes. There was also evidence that construction costs had risen 25 per cent. from 1922 to 1924, that the notes were indorsed by Matz, a man of integrity, considered to have substantial assets, that all of the notes were actually paid in full on or before their due date, that interest thereon was regularly paid semi-annually beginning with October, 1924, that Matz had made one payment of $100,000 in 1928, with a premium for retiring them in advance of maturity, and that in 1925 some of the notes were sold at 87 per cent. of their face value.

The evidence is controverted and challenged both as to substance and relevancy. We have held that the Board is not bound ' to accept opinion evidence, Tracy v. Commissioner, supra; Grand Rapids Store Equipment Corp. v. Commissioner, 6 Cir., 59 F.2d 914, but have recently indicated that this does not mean that the Board is under compulsion to reject it. Brown v. Commissioner, 6 Cir., 94 F.2d 101, decided January 5, 1938. It is urged that the subsequent history of the second mortgage notes has no bearing whatsoever upon their value when received. Where, however, property has no ready or an exceedingly limited market, as is the case made here by the evidence, fair market value may be ascertained upon considerations bearing upon its intrinsic worth. H. H. Miller Industries Co. v. Commissioner, 6 Cir., 61 F.2d 412, 414. There we held that in determining value the Board is not obliged at a later date to close its mind to subsequent facts and circumstances demonstrating it. It has also been held that where the search is for value all evidence is admissible bearing upon the matter. Whitlow v. Commissioner, 8 Cir., 82 F.2d 569. As was said by the Supreme Court in Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 697, 53 S.Ct. 736, 739, 77 L.Ed. 1449, 88 A.L.R. 496, upon a question of value, "But a different situation is presented if years have gone by before the evidence is offered. Experience is then available to correct uncertain prophecy. Here is a book of wisdom that courts may not neglect. We find no rule of law that sets a clasp upon its pages, and forbids us to look within." See

Nachod & United States Signal Co. v. Helvering, 6 Cir., 74 F.2d 164; American Chemical Paint Co. v. Commissioner of Internal Revenue, 3 Cir., 66 F.2d 381.

The principal reliance of the petitioner, however, in its assault upon the evidence before the Board, is the sale by it in 1924 of the second mortgage notes for $93,750, and the refusal of the Board to sustain the Commissioner in his finding that it was colorable and fraudulent. This, the petitioner urges, "should end the case." While it is undoubtedly true that a sale of property upon the open market is evidence of its value and may in a given case be the very best evidence, we know of no rule that gives it conclusiveness. As was said in Crowell v. Commissioner, 6 Cir., 62 F.2d 51, 53, "We do not understand that market value is to be determined only by proof of actual sales. It may exist independent of such sales." Cf. Brown v. Commissioner, supra. But, be that as it may, circumstances under which a sale takes place may unquestionably be subject to inquiry, for it indicates value only when the consideration therefor is what one under no compulsion to sell is willing to take and another not under compulsion to buy, but desirous of buying, is willing to pay. Tracy v. Commissioner, supra; Crowell v. Commissioner, supra.

Shortly after receiving the second mortgage notes, the taxpayer, having no reason for continued existence, desired to reduce its capital stock to a nominal amount and to discontinue its business activity. It tried unsuccessfully to sell the notes, but the only offer was one of $30,000. It then appraised the notes at 30 per cent. of their face value, authorized their sale as soon as possible at this value, or for any price obtainable, and the retirement of all of its outstanding capital stock at par except 100 shares of $1,000 reduced par value. It then sold the second mortgage notes to Joseph & Joseph, a partnership, H. H. Newmark Company, and Stitzel Distilling Company, corporations. But the Joseph partners, and the principal stockholders of Newmark, and Stitzel Distilling Company, either in their own right or as trustees for other stockholders of their respective companies, were the stockholders of the taxpayer and the purchasers immediately upon receiving the second mortgage notes, conveniently executed in available number and amounts, distributed them among their own partners and stockholders in substantially similar if not identical ratio to the latters' interest in the taxpayer. It will readily be seen that the consideration paid for the second mortgage notes by the purchasers, which was to be used by the taxpayer to retire its stock, was of no consequence. Whether they paid more or whether they paid less affected them not at all, for what they parted with for notes they received back immediately in the redemption of their shares. The purchase price was purely arbitrary, governed not by intrinsic value or offers on the market, and if governed at all but by desire of the taxpayer to provide a sum which with cash already received, would be sufficient to retire its stock at par. We think that in these circumstances the sale price of the second mortgage notes does not reflect their value. And this without consideration of the bona fides of the sale. It does not follow, as urged, that the good faith of the sale and the conclusiveness of the price as index of value are inextricably linked.

There was no finding by the Board that the sale was bona fide. It went no further than to find that upon the question of fraud the Commissioner had failed to sustain the burden of proof. Though not bound by strict rules of evidence the Board may, and probably did, apprehend the heavy burden resting on the respondent to establish fraud when it involved a penalty. But this aside, sales may be and often are legitimately made at less than fair market value. A seller may prefer one purchaser to another even though he obtains less. There is necessarily no mala fides in this, even though it prove nothing as to value.

There being substantial evidence to sustain its findings, the decision of the Board of Tax Appeals is affirmed.

Judge Moorman took part in conference and agreed with the decision, but died before he could give consideration to the opinion as prepared.