**MICHELIN CORPORATION,**
Plaintiff,
v.
**Denis J. McMAHON, Collector of Internal Revenue for the Second Collection District of New York, Defendant.**

United States District Court
S. D. New York.
Jan. 19, 1956.

**800**

Raymond B. Goodell, New York City, Coudert Brothers, New York City, of counsel, for plaintiff.

Paul W. Williams, U. S. Atty., New York City, George M. Vetter, Jr., New York City, of counsel, for defendant.

WEINFELD, District Judge.

The plaintiff seeks to recover federal income tax and interest assessed against and paid by it for the year 1946 under the following circumstances:

In September, 1945 the plaintiff agreed to sell certain of its real property with improvements thereon for $700,000, or "$650,000 if the full amount of the purchase price is paid within two years". Title was closed in December, 1945. The purchaser paid $350,000 cash and executed a bond in the sum of $350,000 secured by a mortgage on the premises, payable in ten annual installments of $25,000 each until 1955. Interest was payable at 4%. The bond, pursuant to the terms of the contract, contained a provision permitting prepayment within two years at a discount of $50,000 less than the balance of the principal amount then due.

In May, 1946 plaintiff filed its 1945 income tax return and reported the gross proceeds of the sale as $700,000. Cal-

culated upon the net depreciated basis of the property and after deduction of expenses, it reported a long-term capital gain of $56,739.13. It paid a tax of $36,605.23 for the year 1945.

After the filing of the return, in August, 1946, the purchaser exercised its privilege of prepayment and paid to the plaintiff $300,000 in full satisfaction of the bond and mortgage. In March, 1947 the plaintiff filed its consolidated tax return for the year 1946. It computed its tax liability at $853.10. In reaching that figure it had deducted $50,000 as a long-term capital loss sustained in 1946, reflecting the difference between $300,000 it had received and the face amount of the mortgage. The Commissioner of Internal Revenue disallowed the deduction and assessed a deficiency in the sum of $12,500 plus interest which plaintiff paid and now seeks to recover from the defendant Collector.

One more fact needs to be noted about the 1945 return. In auditing that return in July, 1947, the Commissioner notified the plaintiff of an apparent deficiency of $8,134.13. The plaintiff protested and contended that it was entitled to a refund by reason of having mistakenly reported a gain on the sale of the property.[1] After conference in October, 1947 a settlement was reached whereby the Commissioner agreed to a deduction of a loss upon the sale of the property at least equal to the income reported for the year 1945. Since the amount of the loss wiped out all the 1945 income the entire tax of $36,605.23 was refunded to the taxpayer. As part of the settlement the plaintiff agreed (1) not to claim any carry-overs or carry-backs from 1945 to any other year; and (2) not to file any other claim for refund for 1945 and to execute a final closing agreement.

The issue presented is whether the prepayment of $300,000 for a $350,000

---

1. Its position in substance was that it was entitled to the benefit of the cost basis under §.113(a) (6), 26 U.S.C.A. § 113(a) (6), of the parent corporation from which it had received the property through a nontaxable reorganization. The Commissioner investigated the claim and decided that it was probable that the taxpayer was right.

principal amount of a bond and mortgage, the privilege permitted under the terms of the contract and the bond, resulted in a loss to the plaintiff of $50,000 in 1946, the year in which the purchaser exercised its privilege.

The plaintiff's argument, as I understand it, is two-fold: (1) that the $50,000 potential discount was not ascertainable until the purchaser exercised its privilege and hence plaintiff was required to report $700,000 as the gross proceeds of the sale, which included the bond at its maximum face amount;[2] and alternatively, (2) that the obligation of the purchaser to pay $350,000 with interest at 4%, subject to a discount of $50,000, if paid within two years, was so uncertain as to have no ascertainable fair market value.

These contentions, while ingenious, are without substance. It is not required to distinguish Shapleigh Hardware Co. v. United States [3] and other cases relied upon by the plaintiff. It is clear that the plaintiff is attempting to pull itself up by its own bootstraps—in this instance by seeking to perpetuate an error in reporting in its 1945 return $700,000 as the proceeds of the sale of the property—thus giving full value to the ten-year purchase money bond and mortgage despite the $50,000 prepayment provision. The plaintiff's basic misconception is its view that having reported the mortgage at $350,000 in 1945 it incurred a $50,000 loss in 1946 when it received $300,000. The claimed loss is more illusory than real. Significant facts which the taxpayer appears to have disregarded are that the sales price was not $700,000 but either $700,000 or $650,000 and that the amount payable under the bond was not $350,000 but $300,000 if the purchaser exercised its option. The contract specifically set forth the alternative sales price of $650,000. It also provided that if the purchaser exercised its option of prepayment "the Seller [the plaintiff] agrees to accept $50,000 less than the balance of the principal amount * * * thereby restoring the purchase price to $650,000."

To ascertain whether a loss has in fact been realized on the satisfaction of the bond in 1946, one must first determine the basis of the bond, the item as to which the loss is claimed.[4] Here the "basis" or "cost" of the bond is its fair market value at the time of its receipt in 1945.[5] The bond, although in the principal sum of $350,000 was subject to complete satisfaction upon payment of $300,000 within two years from its date at the will of the purchaser. Thus the fair market value was not the face amount of the bond but only such sum as a ready and willing purchaser would pay with knowledge that within a two-year period there was a possibility of the purchaser taking advantage of the prepayment provision. At no time up to the expiration of the two-year period was the debtor unconditionally obligated

---

2. Here plaintiff relies upon Shapleigh Hardware Co. v. United States, 8 Cir., 81 F.2d 697; Farmville Oil & Fertilizer Co. v. Commissioner, 4 Cir., 78 F.2d 83; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538.

3. See Id., footnote (2).

4. Section 111 of the Internal Revenue Code, 26 U.S.C.A. § 111: "Determination of amount of, and recognition of, gain or loss.
"(a) Computation of gain or loss. The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.
"(b) Amount realized. The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."
Section 113(a)—"Basis (unadjusted) of property. The basis of property shall be the cost of such property * * *."

5. Isadore L. Myers, 1 T.C. 100, 111; Countway v. Commissioner, 1 Cir., 127 F.2d 69, 74; See also Greenbaum, The Basis of Property Shall Be the Cost of Such Property, 3 Tax L.Rev. 351, 369 and authorities there cited at note 61.

to pay the sum of $350,000. To contend that such a bond and mortgage when received by the plaintiff in 1945 had a value of $350,000 is to fly in the face of reality and to disregard common experience. The very fact that the purchaser exercised its privilege and paid $300,000 to satisfy the obligation is some evidence that the fair market value of the bond at and within two years of its receipt by plaintiff did not exceed $300,000,[6] although it is unnecessary for the Court to determine the exact amount.[7] The burden was upon the plaintiff to establish what its fair market value was in 1945, and this it has failed to do.

■ On the other hand, if as the plaintiff also contends, the underlying transaction (the sale of the real property) was not closed[8] in 1945 because the value of the bond was not ascertainable, then there is no basis upon which to establish whether in fact there was any loss or gain upon the sale of the real property since no proof has been presented in this proceeding of the "basis" of the real property.

■ The fact that it may have erroneously computed the value of the bond in its 1945 return does not give plaintiff the right to claim a loss in a subsequent year.[9] Plaintiff's remedy if it felt an error had been made was to file a claim for refund with respect to that year. This appears to be precluded because of the agreement entered into following the conference in October, 1947 when it agreed not to claim carry-overs or carry-backs from 1945 to any other year and not to file or prosecute claims for refund of income.

Lest it be suggested that the conclusion reached herein leads to an inequitable result or is disadvantageous to the plaintiff, it need but be pointed out that at the time of the conference plaintiff was fully aware of two facts: (1) that it had included the $350,000 bond at its face value in its 1945 return; and (2) that in 1946 it had received $300,000 in full payment of the bond. Yet it made no claim or reference thereto at the time of the conference. The conclusion is justified that this was not unintentional since the basis of the settlement with respect to the 1945 return was the allowance of losses at least equal to the income reported and it would have made no difference if the return had been corrected to report the bond as $300,000 instead of $350,000, or alternatively, the gross proceeds of the sale as $650,000 instead of $700,000.

■ Finally, the burden of proof that the Commissioner's determination was incorrect rests upon the plaintiff and it has failed to sustain its burden.[10]

6. Doric Apartment Co. v. Commissioner, 6 Cir., 94 F.2d 895; Stiles v. Commissioner, 5 Cir., 69 F.2d 951; Piper v. Commissioner, 5 Cir., 84 F.2d 560; Shubin v. Commissioner, 3 Cir., 67 F.2d 199.

7. Bonds secured by purchase money mortgage, while not as readily negotiable as stocks or corporate bonds, have a market value and it is not uncommon to evaluate them or to find purchasers therefor. Cf. Doric Apartment Co. v. Commissioner, 6 Cir., 94 F.2d 895. See also Whitlow v. Commissioner, 8 Cir., 82 F.2d 569; T.B.R. 57, 1 Cum.Bull. 40.

8. The amount payable under the bond within or beyond the two-year period was either $300,000 or $350,000, and the transaction was fully closed, at least as to the minimum amount, which at once distinguishes this case from Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143. In that case the future payments were contingent upon the amount of ore mined and in turn apportioned to the purchaser-distributee, under which circumstances it was held impossible to determine with fair certainty the market value of the purchaser's obligation to pay the taxpayer 60¢ per ton for the ore.

9. Farmers & Merchants National Bank v. Commissioner, 8 B.T.A. 58.

10. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623; Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607; Shubin v. Commissioner, 3 Cir., 67 F.2d 199.

The defendant is entitled to judgment dismissing the complaint upon the merits.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.