EUGENE V. SCOTT and GENEVIEVE M. SCOTT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scott v. Commissioner
Docket No. 228-76.
United States Tax Court
T.C. Memo 1979-29; 1979 Tax Ct. Memo LEXIS 496; 38 T.C.M. (CCH) 115; T.C.M. (RIA) 79029; January 22, 1979, Filed Jimmy L. Heisz and Neil J. O'Brien, for the petitioners. William P. Hardeman, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax for the taxable years 1969 and 1973 in the respective amounts of $ 768.19 and $ 2,709. Concessions having been made, three issues remain for our decision: (1) Whether the cost of installing an automatic sprinkler system near the foundation of an apartment building constitutes an expense for repairs deductible under section 212, Internal Revenue Code of 1954, [1] or a nondeductible capital expenditure under section 263; (2) Whether petitioners *498 may deduct a pro rata portion of their basis in an apartment complex due to the repeated flooding of one apartment either as an abandonment loss under section 1.167(a)-8(a), Income Tax Regs., or as a casualty loss under section 165; and (3) Whether the fair market value of a deed of trust note, which was received as partial consideration for property sold in 1973 by a joint venture in which petitioners held an 18.5 percent interest, is only equal to 29.85 percent of its face amount and is includible only to that extent in determining petitioners' 1973 income. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Petitioners Eugene V. Scott (hereinafter petitioner) and Genevieve M. Scott, who compute their income by the cash receipts and disbursements method of accounting, filed their joint Federal income tax returns for 1969 and 1973 with the Internal Revenue Service Center, Austin, Texas. Petitioners filed amended joint Federal income tax returns for 1973 with the Internal Revenue Service *499 Center, Austin, Texas, in November 1975, January 1976, and February 1977. Petitioners resided in Argyle, Texas, when they filed their petition in this proceeding. In July 1972, petitioner acquired a 40-unit apartment complex, Le Customs House, in Dallas, Texas. After noticing some cracks in the masonry and some settling, petitioner consulted a registered professional engineer and a soil engineer. Petitioner was advised that the cracks and settling were caused by shrinkage of the soil due to lack of moisture and that the building would correct itself when the moisture level of the soil normalized. To maintain a constant moisture level in the soil beneath the foundation of Le Customs House and thus keep the foundation properly aligned, petitioner was advised to have, and did have, an automatic sprinkler system installed. Lawnwatering as an end in itself was not a reason for the installation of the system. After the installation of the automatic sprinkler system, petitioner discovered that when the foundation had settled due to lack of moisture in the soil, the foundation had broken water lines onto which it had settled. Water from the broken lines had washed away a sand pad, *500 the moisture level of which was to be regulated by the sprinkler system to stabilize the foundation. Thus the damage done to the soil by the broken water lines had caused the automatic sprinkler system to be useless in maintaining the position of the foundation. Thereafter petitioner's only utilization of the automatic sprinkler system was as a means to water two small strips of lawn adjacent to the foundation. Another approach was then taken to reposition the foundation of the apartment building. The foundation slab of the building was placed on piers, which procedure created cracks in the slab. Afterward, runoff of surface water during heavy rains flooded apartments in Le Customs House. Petitioner alleviated the flooding problem in all but one apartment, which was located in an interior court-yard and could not be protected from flooding without great expense and inconvenience. Instead, petitioner converted the second floor bedrooms of that apartment into two rental "guestrooms" and its ground floor into a club room with a waterproof floor. After this conversion, Le Customs House was a 39-unit apartment complex. Petitioners owned an 18.5 percent interest in a joint venture *501 that acquired 99.275 acres of unimproved realty in Collin County, Texas, in 1968. On January 17, 1973, the joint venture sold the land for $ 10,000 per acre, receiving cash and a deed of trust note. Most or all of the cash was acquired by the purchaser by incurring indebtedness of $ 825,000 which was secured only by a lien on the purchased property. The deed of trust note received by the joint venture (hereinafter the second deed of trust note) was in the face amount of $ 167,500, was secured by a lien only on the underlying property and subordinate to the lien securing the $ 825,000 indebtedness, and provided for no personal or corporate liability for the maker of the note. The second deed of trust note provided that only interest was payable during the first five years of the note's term and that principal and interest were payable over the following five years. Petitioners received their first interest payment and no principal payments on the second deed of trust note; foreclosure on the property securing the note occurred on March 2, 1976; and petitioners received no proceeds from the foreclosure sale. In a transaction subsequent to and unrelated to the above, on December 4, 1973, petitioners *502 received a $ 67,000 interest in a similar second deed of trust, nonrecourse note made in the total face amount of $ 1,002,234.20. The underlying property was unimproved realty. In 1974, petitioners sold their $ 67,000 interest in the note for $ 20,000, which computes to 29.85 percent of the face amount of their interest. On their Federal income tax return for 1973, as finally amended, petitioners deducted the amount expended for the automatic sprinkler system under section 212(2); deducted a portion of their basis in Le Customs House under section 167 because of extraordinary obsolescence due to unmitigated flooding of one apartment; and included $ 9,249.77 (an 18.5 percent interest in $ 49,998.75 rather than in $ 167,500) as the amount realized on receipt of the second deed of trust note, which petitioners valued by applying the same discount rate that they experienced when they sold a note with a face amount of $ 67,000 for $ 20,000. Respondent entirely disallowed both the repair deduction and the extraordinary obsolescence deduction and he required petitioners to include in income their interest in the full face amount of the second deed of trust note, i.e., 18.5 percent of *503 $ 167,500. ULTIMATE FINDINGS OF FACT The installation of an automatic sprinkler system around the foundation of Le Customs House to stabilize the moisture content of the soil and thus maintain the position of the foundation was a repair to Le Customs House. The fair market value of the second deed of trust note received in partial consideration for the 99.275 acre parcel of land was 70 percent of its face amount. OPINION Petitioners argue that the amount expended for an automatic sprinkler system is deductible by them under section 212(2). Respondent contends that such expenditure was for an installation of equipment having a useful life of more than one year, that the equipment was in use from the date of its installation through the date when petitioner's interest in Le Customs House terminated, and that the expenditure was capital in nature and nondeductible pursuant to section 263. Respondent argues that petitioner's use of the sprinkler system for watering the lawn subsequent to its failure in positioning the foundation taints the character of the expenditure and renders it nondeductible as a capital expenditure. We disagree. The purpose for which an expenditure *504 is made determines whether it is a capital expenditure or an expense for repairs. Illinois Merchants Trust Co. v. Commissioner,4 B.T.A. 103, 106 (1926). Petitioner, who was a highly credible and forthright witness, established by his uncontradicted testimony that the only reason he ordered the installation of the sprinkler system was to stabilize the moisture content of the soil, which, according to advice received from engineers, would move the foundation back to its original position and keep it there. By so stabilizing the foundation, the property would be kept in efficient operating condition over its probable useful life.We find that the sprinkler system did not appreciably prolong the life of Le Customs House, increase the value of Le Customs House, or make Le Customs House adaptable to a different use. We, therefore, find as an ultimate fact that petitioner's expenditure in installing the sprinkler system was for repairs. Jones v. Commissioner,242 F.2d 616 (5th Cir. 1957), affg. 24 T.C. 563 (1955); Oberman Manufacturing Co. v. Commissioner,47 T.C. 471, 481-483 (1967). Later use for lawn watering was incidental, *505 was not a purpose for which the system was installed, [2] and is not a determinative factor with respect to the allowance of petitioners' deduction. On the basis of our ultimate finding of fact, we hold that petitioners' expenditure in installing an automatic sprinkler system around the foundation of Le Customs House is deductible pursuant to section 212(2). Next, petitioners contend that they are entitled to a deduction either for an abandonment loss due to extraordinary obsolescence or for a casualty loss. The claimed loss is in respect of an apartment which was subject to flooding, withdrawn from use as an apartment rental unit, and converted into two second floor rental guest rooms and a ground floor club room. The amount of the loss was calculated by petitioners as an amount which bears the same ratio to their total basis in Le Customs House as the floor area of the converted apartment bears to the *506 total floor area of the 40 units in Le Customs House. Respondent argues that petitioners are not entitled to any such deduction. The purpose for allowing a deduction for extraordinary obsolescence is to provide a means to accelerate the recovery of the depreciable cost of an asset when the predicted useful life of that asset is unexpectedly shortened and the usual schedule of depreciation is rendered inaccurate. Real Estate-Land Title & Trust Co. v. United States,309 U.S. 13, 16 (1940); 1.167(a)-9, Income Tax Regs. Petitioners must prove "that the useful life of the property has been shortened and that a deduction for depreciation which covers the ordinary wear and tear will not be sufficient to restore the cost of the property before its usefulness is at an end." Southeastern Building Corp. v. Commissioner,148 F.2d 879, 880 (5th Cir. 1945), affg. 3 T.C. 381 (1944). In addition to showing that the useful life of the asset is suddenly terminated, under section 1.167(a)-8(a)(3), Income Tax Regs., it must be shown that the asset was permanently withdrawn from use in the taxpayer's trade or business. Coors Porcelain Co. v. Commissioner,52 T.C. 682, 693 (1969), *507 affd. 429 F.2d 1 (10th Cir. 1970). Similarly, under section 1.167(a)-8(a)(4), Income Tax Regs., not only must the useful life of the asset be shown to be suddenly terminated but also-- In order to qualify for the recognition of loss from physical abandonment, the intent of the taxpayer must be irrevocably to discard the asset so that it will neither be used again by him nor retrieved by him for sale, exchange, or other disposition. [Sec. 1.167(a)-8(a)(4), Income Tax Regs.] Petitioners have not shown that the apartment for which the extraordinary obsolescence deduction is sought was either permanently withdrawn from use in petitioner's trade or business or physically abandoned. On the contrary, the evidence here shows that petitioner converted the apartment in question into two guest rooms and a club room, all of which continud in use thereafter. Therefore, we hold that petitioners are not entitled to a deduction for extraordinary obsolescence in respect of the converted apartment. Alternatively, petitioners argue that they are entitled to a casualty loss deduction pursuant to section 165 in connection with the flooding of the apartment which was later converted. *508 Section 1.165-7(b), Income Tax Regs., prescribes the method for determining the amount deductible as a loss pursuant to section 165. Such amount is the lesser of: (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in sec. 1.1011-1 for determining the loss from the sale or other disposition of the property involved. [Sec. 1.165-7(b)(i) and (ii), Income Tax Regs.] Even assuming the existence of a deductible loss, a fact which we have not found, petitioners have failed to prove the fair market value of the property immediately before and after the claimed casualty. Without such proof we are unable to determine the amount of a deduction under section 165 as required by the above regulation. Having failed to present sufficient evidence to carry their burden of proof, petitioners are not entitled to relief under their alternate theory. Welch v. Helvering,290 U.S. 111 (1933). Finally, petitioners argue that the fair market value of a second deed of trust, nonrecourse note received *509 by them was less than its face amount and should be included in income at the lesser value. Petitioners contend that the second deed of trust note should be valued at $ 49,998.75, which is 29.85 percent of its $ 167,500 face amount, and that they should include 18.5 percent of $ 49,998.75 in income rather than 18.5 percent of $ 167,500. To prove the fair market value of the second deed of trust note, petitioners presented testimony by an expert witness about the general business climate prevailing in the Dallas real estate market for pertinent years; petitioners also introduced evidence and presented testimony concerning the sale of a note received by petitioners in an unrelated land sale as well as evidence and testimony concerning the second deed of trust note. Respondent urges that petitioners are not entitled to a reduction from the face amount of the note. When property is sold, the amount realized by the seller is "the sum of any money received plus the fair market value of the property (other than money) received." Sec. 1001(b). Petitioners report their income for Federal income tax purposes on the cash receipts and disbursements method of accounting.Pursuant to that *510 method, receipts are includible in income when they are received, section 1.446-1(c)(1)(i), Income Tax Regs., and to the extent of their value in terms of money, section 1.446-1(a)(3), Income Tax Regs. Therefore, petitioners are required to report the cash received and the fair market value of the second deed of trust note as the amount realized by them on the sale of their interest in the 99.275 acres of land. Accordingly, it is necessary to value the second deed of trust note. Respondent has determined that the value of the second deed of trust note was equal to its face amount. Petitioners bear the burden of proving that its fair market value is less than its face amount. Welch v. Helvering,290 U.S. 111 (1933); Reinecke v. Spalding,280 U.S. 227 (1930). Petitioners' expert witness testified to the general market conditions prevailing at the time the note was received, but he did not testify to the propreity of the specific discount applied by petitioners. Petitioner's own testimony related to the fair market value of another note established by its actual sale, but did not present specific reasons why petitioner believed that the second deed *511 of trust note should be subject to the very same discount rate as was experienced with the other note. Because petitioners have not shown sufficient similarity between the circumstances affecting the two notes, particularly with respect to the identity, solvency, and reputation of the respective makers, petitioners are not entitled to value the second deed of trust note at the same discount rate experienced with respect to the note received in December 1973. However, petitioners have proven that the value of the second deed of trust note was less than its face amount. Taking into account factors such as the nonrecourse nature of the note, the subordinate status of petitioners' lien on the land, the limitation of security to a lien on the unimproved land itself, the subsequent default of the maker, and the timely receipt of an interest payment on the note, and after consideration of the entire record, we find that the fair market value of the second deed of trust note received by petitioners on January 17, 1973, was 70 percent of its face amount. [3]Doric Apartment Co. v. Commissioner,32 B.T.A. 1187 (1935), affd. 94 F.2d 895 (6th Cir. 1938); Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). *512 Accordingly, we hold that petitioners must include 70 percent of the face amount of the second deed of trust note in determining their income for 1973. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. We note that lawn watering was a function necessary to stabilize the moisture content of the soil adjacent to the foundation. Lawn watering was, however, merely a means to the end of moisture stabilization and not an end unto itself according to petitioner's testimony.↩
3. Bond v. Commissioner,T.C. Memo 1955-144, affd. 232 F.2d 822 (4th Cir. 1956), cert. denied 352 U.S. 878↩ (1956).