### COMMISSIONER OF INTERNAL REVENUE.
v.
### ADAM, MELDRUM & ANDERSON CO., Inc.
#### No. 263, Docket 22950.

United States Court of Appeals Second Circuit.
Argued May 5, 1954.
Decided July 29, 1954.

**164**

S. Dee Hanson, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack and Lee A. Jackson, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Fred R. Tansill, Washington, D. C. (John F. Connelly, Buffalo, N. Y., and Eugene Meacham, Washington, D. C., on the brief), for respondent.

Before CLARK, FRANK, and MEDINA, Circuit Judges.

CLARK, Circuit Judge.

This petition involves the proper tax treatment of certain transactions undertaken by respondent, Adam, Meldrum & Anderson Co., Inc., taxpayer, and arising out of the financial difficulties of its subsidiary, Adam, Meldrum & Anderson State Bank, and the liability imposed by statute on holders of bank stock. The issues concern the taxpayer's excess profits tax for the year 1944. The facts are fully stated in the decision of the Tax Court, reported in 19 T.C. 1130.

Taxpayer, a New York corporation, is engaged in the department store business in Buffalo, New York. Since 1923 it has owned and operated a bank situ-

ated on the mezzanine floor of its store premises for the mutual convenience and advantage of itself and its customers. In 1930 and 1931, the Bank fell into financial difficulties; and two stock assessments, together with a transfer of securities by the taxpayer to it and other pledges by its directors, proved inadequate to support it. In May, 1933, the Superintendent of the Banking Department of the State of New York took possession of it under N.Y. Banking Law § 606(1) (c, e), McK.Consol.Laws, c. 2. On the same day, on application of the Bank, he surrendered the assets and authorized it to resume business pursuant to N.Y. Banking Law § 609, blocking 40 per cent of its demand deposits and issuing Certificates of Withheld Deposits. In lieu of an assessment on the shareholders on account of their statutory double liability under N.Y. Banking Law § 113–a, the Superintendent permitted the Bank to accept certain promissory notes and other security.

In 1940 the certificates had not been paid, and the Bank sued the taxpayer on a claim arising out of its statutory liability. Judgment was rendered for the Bank in 1942, and an appeal was taken. While the appeal was pending, a plan was approved under N.Y. Banking Law § 609(8) whereby the taxpayer gave the Bank, in compromise of the pending litigation, $137,187.35 and certificates aggregating $2,767.47, which it had acquired by purchase; the bank stock, having become worthless, was cancelled, new stock was issued to the certificate holders at the rate of $1 par for each $2 of unpaid principal claim; and the new stock was immediately assigned to the taxpayer in exchange for merchandise certificates worth $2 for each $1 par value of stock.

■ The settlement and consummation of the plan took place during the taxable year 1944. Taxpayer sought to deduct the sums paid in settlement of the litigation and certain related legal expenses as ordinary and necessary business expenses, or as business losses incurred in that year. The Commissioner takes the view that, since the plan left the taxpayer's ownership unimpaired, the transaction involved no more than a reorganization or an additional contribution of capital, and that no loss occurred; or alternatively that any loss was one on stock under I.R.C. § 23(g) (2), 26 U.S.C. § 23(g) (2), and hence limited by I.R.C. § 117 in substance to offset capital gains. The Tax Court found for taxpayer, three judges dissenting; and the Commissioner petitioned for review.

At the outset it is clear that the taxpayer's original investment was wiped out by the cancellation of the old stock. The Superintendent in the course of his official duties and on sufficient evidence declared the stock to be worthless at a time when the Bank's liabilities far exceeded its assets. True, the cancellation of shares was undertaken under the same plan whereby the taxpayer bought out the interest of the certificate holders; but that does not alter the situation. N.Y. Banking Law § 609(8) (a) authorizes such a plan only when the bank's liabilities (including the unpaid amount of certificates) exceed its assets. Hence a prerequisite is the worthlessness of the stock. To treat the events under the plan as a reorganization or capital contribution, as urged by the Commissioner, we must view the certificate holders as ordinary creditors who have at last been paid. But N.Y. Banking Law § 609(5, 6) places the certificate holders substantially in the shoes of stockholders, and when the original stock is found worthless and cancelled they must hold whatever equity remains. Thus the issuance to them of new stock was no more than an appropriate recognition of their interest. And in a very real sense the assignment of their interest to the taxpayer in return for merchandise certificates was a sale for value. In short, the taxpayer's investment having been wiped out it repurchased the Bank from its new owners. Accordingly the cancellation of stock established a loss within the tax year 1944.

As for the nature of the sums paid in settlement of the litigation, however, we think (with the dissenting judges below) that the Commissioner's alternative position has merit. It is settled that an assessment of the statutory double liability imposed on the holders of bank stock is not a loss, but must be treated as an additional cost of the stock to the stockholder. First Nat. Bank in Wichita v. C. I. R., 10 Cir., 46 F.2d 283; Porter Property Trustees, Ltd., 42 B. T.A. 681, affirmed without discussion of this point, Porter v. C. I. R., 9 Cir., 130 F.2d 276; Tuttle v. United States, 122 Ct.Cl. 1, 101 F.Supp. 532, 535; see Interstate Transit Lines v. C. I. R., 8 Cir., 130 F.2d 136, affirmed 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607; U.S.Treas. Reg. 111, § 29.24–2. The Tax Court recognized this principle; but finding that the old stock was cancelled before the liability was paid, it held that in paying the sum, "which was undoubtedly in the nature of or in lieu of an assessment, it suffered a complete out-of-pocket loss for [taxpayer's] stockholdings in the bank had then ceased to exist." While this, as a statement of fact, is impeccable, we cannot follow the Tax Court to its conclusion that an ordinary deductible business loss resulted. The payment was made on account of the statutory bank stock liability, which continues until satisfied, whether or not the stock itself be cancelled. Nor can the taxpayer's delay in meeting its existing obligation change statutory liability into something else. Arrowsmith v. C. I. R., 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6. This expense, viz., the $137,187.35 paid the Bank, plus the $2,767.47 paid for the certificates transferred to the Bank, must be added to the tax base of the old stock, and charged as a capital loss under I.R. C. §§ 23(g) (2) and 117 as of the time of the cancellation. The same holds true as to the sum of $11,180.50 paid to counsel for the Bank as part of the settlement, and the sum of $4,104.28 paid to the tax-payer's counsel for services in the litigation. The $1,250 paid to counsel for the taxpayer in connection with the acquisition of the new shares, however, is a part of the cost of these shares and hence is not presently in issue. Brand v. C. I. R., 6 Cir., 209 F.2d 255; Mills Estate v. C. I. R., 2 Cir., 206 F.2d 244; Safety Tube Corp. v. C. I. R., 6 Cir., 168 F.2d 787.

Taxpayer seeks to avoid this result by relying on I.R.C. § 23(g) (4), added by the Revenue Act of 1942. Its argument cannot, however, be sustained. That section provides that losses on the stock of an "affiliated" corporation may be fully deducted, without the limitation of I.R.C. § 117. But it requires as a condition of this exception that more than 90 per cent of the affiliate's income be derived "from sources other than royalties, rents * * *, dividends, interest * * *, annuities, or gains from sales or exchanges of stocks and securities." Taxpayer concedes that "at first blush" the section is not applicable to this bank, whose income is derived from interest, but argues that this is an over-literal reading nullifying congressional intent. To support its position it cites legislative history [1] tending to show that the quoted provision sought to confine the relief accorded by the section to operating, as opposed to holding or investment, companies. But the particular references cited appear to stress the limits, rather than the extent, of the section, to satisfy the doubts of other legislators lest holding companies, too, be excepted. And the proposed alternative reading applying to "all operating companies" would open the door to insurance companies, finance companies, real estate operating companies, etc., without suggestion of any workable limitation. Congress has enunciated a clear and simple rule which, we agree with the Tax Court, is not to be set aside. Accordingly the loss is one on stock under I.R.C. § 23(g) (2). The decision of the

---

[1]. Sen.Rep. No. 648, 76th Cong., 1st Sess., Rep. of the Finance Committee, 9; 6 Cong.Rec. 121, 78th Cong., 1st Sess., Jan. 12, 1944, remarks of Sen. Davis.

Tax Court must therefore be reversed and the proceeding remanded for a recomputation of the tax in accordance with the views herein set forth.

Reversed and remanded.