Anthony **CAMPAGNA** and Marie P. Campagna, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Civ. No. 90–149.

United States District Court
S. D. New York.

Dec. 4, 1959.

Jerome Kamerman, New York City, for plaintiffs.

S. Hazard Gillespie, Jr., U. S. Atty., for the Southern District of New York, New York City, for defendant. Marguerite R. De Smet, New York City, of counsel.

SUGARMAN, District Judge.

Plaintiffs sue for the recovery of income taxes claimed to have been erroneously assessed and collected. The refunds claimed are $5,603.79, $12,808.02, $8,-184.70 and $21,235.12, taxes paid on income earned in the years 1941, 1943, 1944 and 1945.

The issue here is whether certain moneys received by plaintiff Marie P. Campagna were ordinary income or capital gains. The income was paid on a bond secured by a purchase money second mortgage covering a certain building on the corner of West 42nd Street and Seventh Avenue, New York City, and also covering the leasehold estate in the land on which the building was erected.

The parties have stipulated that:

"1. This is an action based upon the laws of Congress and is for the recovery of income taxes in excess of $10,000.00 assessed and collected by a Collector of Internal Revenue for the Third District of New York, for the United States, who is not now in office as Collector of Internal Revenue. The jurisdiction of this Court is based upon Title 28, United States Code, Section 1346(a) (1).

"2. The plaintiffs are husband and wife and reside at 600 West 249th Street, Riverdale, Bronx, in the State of New York.

"3. On October 8, 1934 Rialto Times Square, Inc., a New York corporation, hereinafter referred to as Rialto, was organized for the purpose of constructing and operating a building. At all times pertinent hereto, plaintiff Anthony Campagna was the president of said corporation.

"4. On October 3, 1934 Rialto leased from The Gerry Estates, Inc. the premises known as 201–203 West 42nd Street and 1481–3 Broadway, New York City, which premises occupied the northwest corner of 7th Avenue and 42nd Street. Said lease commenced on November 1, 1934, expired on October 31, 1955, and contained two twenty year renewal options. The rentals were as follows:

| | |
|---|---|
| First 5 Years | — $75,000 per year |
| Second 5 Years | — $85,000 per year |
| Third 5 Years | — $95,000 per year |
| Last 6 Years | — $105,000 per year |

Renewal rentals were 5% of net appraisal value, but not less than $105,000 per year. In addition, there was payable each year an additional rent equal to 20% of the

amount by which Rialto's gross rentals exceeded $500,000.

"5. In 1937 and 1938, the land was assessed for $2,750,000 and $2,800,000 respectively.

"6. During the period 1934–1935, Rialto constructed a four story commercial building on the aforementioned premises at a cost of $511,019.61.

"7. In 1937 and 1938, the building was assessed for $250,000 and $450,000 respectively.

"8. On December 1, 1935 Rialto mortgaged to The Chase National Bank of the City of New York, as Trustee, the aforementioned building and its leasehold interest in the land. This mortgage was in the principal amount of $185,000, and was secured by 5½% Serial Mortgage Bonds, which bonds were issued in twenty series. The first ten bonds were in the principal amount of $12,500 each, and the second ten bonds were in the principal amount of $6,000 each. The bonds were to mature one at a time at six month intervals commencing June 1, 1936. Interest at 5½% was payable semi-annually.

"9. On June 30, 1937, Rialto sold its building and assigned its leasehold interest in the premises to The 1481 Broadway Corporation for a total consideration of $1,049,369.00. This sum was composed of the following elements: Cash—$389,369.00; Assumption of balance due on first mortgage—$153,131.00; Second Purchase Money Mortgage —$506,869.00.

"10. This second mortgage, a copy of which is annexed to the complaint, was for a term of eleven years, and payable at the rate of $5,000 per month including 5% interest.

"11. In 1937 when Rialto sold its building and leasehold interest to The 1481 Broadway Corporation, it reported in its 1937 income tax return a gain on this transaction of $159,498.10.

"12. Said gain was computed as follows:

| | | | |
|---|---|---|---|
| Sale Price | | | |
| Cash | | | $389,369.00 |
| Assumption of First Mortgage | | | $153,131.00 |
| Second Purchase Money Mortgage | | | $506,869.00 |
| Total Sale Price | | | $1,049,369.00 |
| Cost of Building | $511,019.61 | | |
| Less Depreciation | $ 38,648.52 | $472,371.09 | |
| Legal Fees Deferred | | $ 9,163.69 | |
| Leasing Commission Deferred | | $ 14,489.78 | |
| Discount of Second Mortgage | | | |
| Bal. due 12/31/37 | $492,307.93 | | |
| Less 20% | $ 98,461.59 | $393,846.34 | $889,870.90 |
| Profit | | | $159,498.10 |

"13. From January 1, 1938 until its dissolution on September 30, 1938, Rialto reported 80% of its principal collections and 100% of its interest collections with respect to the second mortgage as ordinary income.

"14. On September 30, 1938, the plaintiff Marie P. Campagna owned 70% of the stock of Rialto.

"15. On September 30, 1938 Rialto was liquidated. Among other things, it distributed in liquidation the aforesaid second mortgage.

Plaintiff Marie P. Campagna received a 70% interest in this mortgage as a result of the liquidation.

"16. The unpaid balance of the second mortgage at the time of liquidation was $465,322.85. Plaintiff Marie P. Campagna's 70% interest had a face value of $325,726.00.

"17. Plaintiff Marie P. Campagna had a zero (0) basis for her stock in Rialto.

"18. After Rialto was dissolved, an individual was designated to receive the payments with respect to the second mortgage, and to distribute the moneys so received to the owners of the mortgage according to their respective interests.

"For the period January 1, 1939 to December 31, 1939, said individual received $38,059.24 principal on the mortgage, $21,940.76 interest on the mortgage, and incurred expenses of $2,782.09. Plaintiff Marie P. Campagna was entitled to receive 70% of the principal and interest payments and to deduct 70% of the expenses. In reporting her income for the year 1939, Marie P. Campagna excluded 20% of the share of the principal which she received, and reported the balance of the principal, plus her share of the interest, less her share of the expenses as a capital gain.

"For the period January 1, 1940 to December 31, 1940, said individual received $40,006.46 principal, $19,993.54 interest and incurred expenses of $760.05. In reporting her income for the year 1940, Marie P. Campagna excluded 20% of her share of the principal and reported the balance of her share of the principal plus her share of the interest less her share of the expenses as a capital gain.

"19. In 1939 and 1940 plaintiff Marie P. Campagna received sums of money with respect to said mortgage, which sums exceeded the amount she reported as a gain on liquidation in her 1938 income tax return.

"20. In the year 1941, plaintiff Marie P. Campagna received the sum of $29,498.47 principal and $7,427.51 interest with respect to said second mortgage. From the principal payment, plaintiff deducted 20%, or $5,899.69 as having been reported as a capital gain upon which a tax was paid in 1938, and reported the balance of the principal, $23,589.78 and the $7,427.51 interest as a capital gain in the lump sum of $31,-026.29.

"21. Thereafter, the Commissioner of Internal Revenue caused the aforesaid return of the plaintiff Marie P. Campagna for the year 1941 to be examined and as a result of such examination, the Commissioner determined that there was a deficiency in income tax due from the plaintiff for the calendar year 1941 in the amount of $4,362.28 with interest of $1,241.51 and assessed the said sum against plaintiff as additional income tax for the year 1941.

"22. In reaching his determination that there was a deficiency in income tax due from the plaintiff for the year 1941, the Commissioner of Internal Revenue asserted that of the $29,498.47 principal payment, the plaintiff had reported 20% or $5,889.69 as a capital gain in 1938, and that the balance of $23,598.78 was reportable in the current year, but was to be reported as ordinary income. The Commissioner also asserted that the interest received by the plaintiff in the amount of $7,-427.51 represented ordinary income in 1941.

"23. On March 3, 1947 plaintiff Marie P. Campagna paid to the Collector of Internal Revenue the aforesaid sum of $5,603.79, being the total of the additional income tax and interest assessed for the year 1941.

144

"24. On February 3, 1949, plaintiff Marie P. Campagna duly filed with the Collector of Internal Revenue for the Third District of New York a claim for refund in the amount of $5,603.79, alleged to have been erroneously and illegally assessed against and collected from her as income tax and interest for the year 1941.

"25. On March 14, 1952, the Commissioner of Internal Revenue notified plaintiff by registered mail of the rejection and disallowance of her aforesaid claim for refund.

"26. Although repayment thereof has been demanded, no part of said sum of $5,603.79 has been remitted, refunded or repaid to the plaintiff or to anyone on her behalf.

"27. For the year 1942 plaintiffs Anthony Campagna and Marie P. Campagna filed a joint income tax return as husband and wife.

"28. During the year 1942 plaintiff Marie P. Campagna received payments of principal due under the bond and mortgage in the amount of $29,478.67. From this principal payment the plaintiff deducted 20 per cent or $5,895.74 as having been reported as a capital gain and tax paid thereon in 1938, and reported the balance of the principal payment of $23,582.93 less $105.00 of collection expenses or a net balance of $23,477.93 as a capital gain on the plaintiffs' joint income tax return for the year 1942. The said income tax return for the year 1942 was filed with the Collector of Internal Revenue for the 3rd District of New York, and the tax shown to be due thereon was paid to the said Collector.

"29. For the year 1943 plaintiffs Anthony Campagna and Marie P. Campagna filed a joint income tax return as husband and wife.

"30. In the year 1943 plaintiff Marie P. Campagna received payments of principal due under the bond and mortgage in the amount of $30,031.66. From the aforesaid principal payments plaintiff deducted 20 per cent or $6,006.34 as having been reported as a capital gain and tax paid thereon in 1938 and plaintiff also deducted $105.00 for collection charges, and reported the balance of the principal payment of $23,920.32 as a capital gain on the joint income tax return filed by the plaintiffs for the year 1943. The said income tax return was filed with the Collector of Internal Revenue for the 3rd District of New York and the tax shown to be due thereon was paid to the said Collector.

"31. Thereafter the Commissioner of Internal Revenue caused the aforesaid returns of the plaintiffs for the years 1942 and 1943 to be examined and as a result of such examination the Commissioner determined that there was a deficiency in income tax due from the plaintiffs for the year 1943 in the amount of $10,956.90 with interest of $1,851.12, and assessed against the plaintiffs as additional income tax and interest for 1943 the said sum of $12,808.02.

"32. In reaching his determination that there was a $12,808.02 deficiency in income tax due from the plaintiffs for the year 1943, the Commissioner of Internal Revenue asserted that of the principal payments, the plaintiff had reported 20 per cent as a capital gain in 1938, and that the balances of $23,477.93 collected in 1942 and $23,920.32 collected in 1943 were to be reportable as income in those years but were to be reported as ordinary income. Said deficiency was also caused by the disallowance of a $1,336.66 capital loss and disallowance of $110.00 in contributions.

"33. On June 13, 1947 and August 21, 1947, the Collector of Internal Revenue collected from the plaintiffs the sum of $12,808.02 as additional income tax and interest for the year 1943.

"34. On February 3, 1949, the plaintiffs duly filed with the Collector of Internal Revenue for the 3rd District, New York, a claim for refund in the amount of $12,808.02 alleged to have been erroneously and illegally assessed against and collected from them as income tax and interest for the year 1943.

"35. On March 14, 1952, the Commissioner of Internal Revenue notified plaintiff Marie P. Campagna by registered mail of the rejection and disallowance of the aforesaid claim for refund. Although repayment thereof has been demanded, no part of the said sum of $12,808.02 has been remitted, refunded or repaid to the plaintiffs or to anyone on their account.

"36. For the year 1944 plaintiffs Anthony Campagna and Marie P. Campagna filed a joint income tax return as husband and wife.

"37. During the year 1944 plaintiff Marie P. Campagna received payments of principal due under the bond and mortgage in the amount of $37,773.72. From the aforesaid principal payment plaintiff deducted 20 per cent or $7,554.74 as having been reported as a capital gain and the tax paid thereon in 1938, plus the sum of $112.00 for collection charges, and reported the balance of $30,106.98 as a capital gain in 1944 on the plaintiffs' joint income tax return for that year. The said return was filed with the Collector of Internal Revenue, 3rd District of New York, and the tax shown thereon was duly paid to the said Collector.

"38. Thereafter the Commissioner of Internal Revenue caused the aforesaid return of the plaintiffs for the year 1944 to be examined and as a result of such examination the Commissioner determined that there was a deficiency in income tax due from the plaintiffs for the year 1944 in the amount of $7,358.73 with interest of $825.97, and assessed against the plaintiffs as additional income tax and interest for 1944 the said sum of $8,184.70.

"39. In reaching his determination that there was a $8,184.70 deficiency in income tax due from the plaintiffs for the year 1944, the Commissioner of Internal Revenue asserted of the $37,773.72 principal payment the plaintiff had already reported 20 per cent or $7,554.74 as a capital gain in 1938 and that the balance of $30,106.98 was reportable in the current year 1944 but was to be reported as ordinary income. Said deficiency was also caused by the inclusion of an additional $3,000 in ordinary income and by the disallowance of a $500 loss.

"40. The plaintiffs paid to the then Collector of Internal Revenue for the 3rd District of New York additional tax for the year 1944 in the total amount of $8,184.70 as follows:

| | |
|---|---|
| April 12, 1948 | $6,243.17 |
| June 2, 1948 | 825.97 |
| September 25, 1950 | 750.00 |
| November 28, 1951 | 91.39 |

There was also credited to the account of the plaintiffs on November 16, 1951, the sum of $274.17.

"41. On February 3, 1949, the plaintiffs duly filed with the Collector of Internal Revenue for the 3rd District, New York, a claim for refund for $8,184.70, alleged to have been erroneously and illegally assessed against and collected from them as income tax and interest for the year 1944.

"42. No decision has been rendered by the Commissioner of Internal Revenue on the claim for refund filed by plaintiffs as aforesaid for the year 1944, and six months have expired since the said claim was filed.

"43. Although payment has been demanded, no part of the $8,184.70 has been remitted, refunded or repaid to plaintiffs or to anyone on their account.

"44. For the year 1945 plaintiffs Anthony Campagna and Marie P. Campagna filed a joint income tax return as husband and wife.

"45. During the year 1945 plaintiff Marie P. Campagna received payments of principal due under the bond and mortgage in the amount of $31,168.99. From this principal payment, plaintiff deducted 20 per cent or $6,233.80 as having been reported as a capital gain and tax paid thereon in 1938, plus $105.00 for collection charges, and reported the balance of $24,830.19 as a capital gain on the plaintiffs' income tax return for the year 1945. Said income tax return was filed with the Collector of Internal Revenue for the 3rd District of New York and the tax shown to be due thereon was paid to the said Collector.

"46. On June 6, 1947, the plaintiffs filed an amended joint income tax return for 1945 wherein the said payments on the bond and mortgage were treated as ordinary income resulting in additional tax of $19,-845.91 plus interest of $1,389.21.

"47. The plaintiffs now claim that the transaction was a long term capital gain and that the amount received under the mortgage for the year 1945 was correctly reported on the original income tax return filed for that year.

"48. The plaintiffs paid the sum of $21,235.12 to the said Collector of Internal Revenue as additional tax and interest for the year 1945, said amount being paid on (Sic) part on June 6, 1947, and on October 3, 1947.

"49. On February 3, 1949, the plaintiffs duly filed with the Collector of Internal Revenue for the 3rd District, New York, a claim for refund of $21,235.12, alleged to have been erroneously and illegally assessed against and collected from them as income tax and interest for the year 1945.

"50. On May 14, 1952, the Commissioner of Internal Revenue notified the plaintiffs by registered mail of the rejection and disallowance of the aforesaid claim for refund.

"51. Although repayment thereof has been demanded, no part of the said sum of $21,235.12 has been remitted, refunded or repaid to the plaintiffs or to anyone on their account."

Additional testimony of witnesses was heard by the court.

Plaintiffs contend that the principal payments received by the plaintiff as collections under the second mortgage in the years 1941 to 1945 inclusive are capital gains representing amounts received from the sale or redemption of stock upon the liquidation of a corporation pursuant to Sections 115 and 117 of the Internal Revenue Act of 1938, 26 U.S.C.A. §§ 115, 117. It is the plaintiffs' position that the value of the second mortgage on the leasehold received in 1938 by plaintiff Marie P. Campagna was in fact unascertainable and that subsequent collections received upon an asset whose value was unascertainable at the time it was received represent capital gain income.

In support of their position plaintiffs introduced the testimony of experts in the real estate field who attempted to prove that Marie P. Campagna's 70% interest in the purchase money second mortgage on premises had no ascertainable value so that the liquidation of her interest in Rialto Times Square, Inc., was not a "closed transaction" within the principles enunciated in Burnet v. Logan.[1]

I am not so persuaded. In Burnet v. Logan it was said at page 405 of 283 U. S.:

"Whether property has a fair market value is a question of fact. * * * "

---

1. 1931, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143.

And at page 413 of 283 U.S., at page 552 of 51 S.Ct.:

"The consideration for the sale was $2,200,000 in cash and the promise of future money payments wholly contingent upon facts and circumstances not possible to foretell with anything like fair certainty. The promise was in no proper sense equivalent to cash. It had no ascertainable fair market value. The transaction was not a closed one. Respondent might never recoup her capital investment from payments only conditionally promised * *."

The only factor really lending uncertainty to the value of the purchase money second mortgage here in suit was the depressed economy of the nation, and more particularly the uncertain nature of the real estate market.

There were no conditions attached to the obligations on the bond secured by the second mortgage in which plaintiff Marie P. Campagna was interested.

The economic instability of the market was given recognition by the taxpayer and the Commissioner in valuing her interest therein for the purpose of ascertaining her 1938 tax liability by discounting the mortgage by 80% in determining Marie P. Campagna's tax liability on acquisition of her interest therein.

The factor which lent uncertainty to this purchase money mortgage is worlds apart from the factors which rendered impossible evaluation with "fair certainty" the contingent contract rights with which Burnet v. Logan dealt.

Plaintiffs' experts' testimony is convincing that the real estate market was depressed in 1938 and that they would not have recommended to a client the purchase of plaintiff Marie P. Campagna's interest in the mortgage. Beyond that their testimony is of little assistance in determining whether her interest had an ascertainable value for tax purposes.

Considering all the relevant factors, including the security underlying the mortgage debt, the payments made thereon prior to the sale, the "cash flow", actual and projected, I find that the purchase money second mortgage had an ascertainable value when received in 1938,[2] and that plaintiff Marie P. Campagna's interest was 70% thereof.[3]

Plaintiffs' alternative theory is that they are entitled to judgment herein on the principles enunciated in Arrowsmith v. Commissioner.[4]

The short answer to this contention is the absence of a "sale or exchange" in the transactions giving rise to the instant litigation without which there can be no capital gains treatment accorded to the income received. The moneys received were payments on a debt secured by a mortgage and not moneys received by way of sale or exchange.[5]

In view of the court's determination that the liquidation of plaintiff Marie P. Campagna's interest in the shares of Rialto Times Square, Inc. was a "closed transaction", the amounts received by her in later years in payment of an obligation acquired in a corporate liquidation were ordinary income.

2. Wells Amusement Co. v. Commissioner of Internal Revenue, 4 Cir., 1934, 70 F.2d 208.

3. By supplementary trial memorandum, plaintiffs state that "it is plaintiffs position that if the Court is to find that the second mortgage here in question had a readily ascertainable value, in 1938, the Court would also have to find or 'ascertain' that value as an exact amount, stated in dollars, upon which amount a tax should have been paid by plaintiff in 1938", relying on Gersten v. Commis-

sioner of Internal Revenue, 9 Cir., 1959, 267 F.2d 195. The value of the purchase money second mortgage was not in issue in the instant case; wl ther it had an ascertainable value was in issue.
    It is unnecessary to determine the value in this action because no tax consequences would flow from such evaluation.

4. 1952, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6.

5. Cf. Helvering v. William Flaccus Oak Leather Co., 1941, 313 U.S. 247, 61 S.Ct. 878, 85 L.Ed. 1310.

I conclude that the plaintiffs are not entitled to the relief sought in their complaint.

This decision shall constitute the findings of fact and conclusions of law.

The defendant shall have judgment against the plaintiffs.