Anthony CAMPAGNA and Marie P. Campagna, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 284, Docket 26316.

United States Court of Appeals Second Circuit.

Argued March 22, 1961.

Decided May 10, 1961.

Sidney Feldshuh, New York City (Jerome Kamerman, Sidney Rabekoff, New York City, on the brief), for appellants.

Joseph M. Field, Asst. U. S. Atty., New York City (Morton S. Robson, U. S. Atty. for Southern District of New York, Stephen Kurzman, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Plaintiffs brought this action in the District Court to recover income taxes

alleged to have been erroneously assessed and collected by the United States for the tax years 1941, 1943, 1944 and 1945. From a judgment for defendant, plaintiff appeals.

The stipulated facts, which appear in the District Court's decision (179 F. Supp. 140), are briefly summarized as follows: In 1934, Rialto Times Square Inc. (Rialto) leased a parcel of land on the northwest corner of Seventh Avenue and 42nd Street, New York City, from Gerry Estates Inc., the owner of the fee. The term of the lease was 21 years with two 20-year renewal options; the ground rent was $75,000 per year for the first 5 years, $85,000 per year for the second 5 years, $95,000 per year for the third 5 years, and $105,000 per year for the remaining 6 years. The lease required Rialto to erect a building on the premises and it did so in 1934–35 at a cost of $511,019.61. On December 1, 1935, The Chase National Bank loaned Rialto $185,-000 in exchange for 5½ per cent serial mortgage bonds, maturing semi-annually commencing June 1, 1936. The bonds were secured by a first mortgage upon the leasehold and the building.

After operating the building until June 30, 1937, Rialto sold the building and the leasehold to The 1481 Broadway Corporation (1481 Broadway) for a total consideration of $1,049,369. This sum represented: cash, $389,369; assumption of the balance due on the first mortgage, $153,131; and a purchase money second mortgage for $506,869. This second mortgage was for a term of eleven years and was payable at the rate of $5,000 per month including interest. In reporting its income for 1937, Rialto valued this mortgage at 20 per cent of its face value.

On September 30, 1938, Rialto was liquidated, and its assets, including the second mortgage which then had a balance due of $465,322.85, were distributed to the stockholders. On this date plaintiff Marie P. Campagna owned 70 per cent of the Rialto stock and thus her interest in the second mortgage, at face value, was $325,726. In determining the amount realized from the liquidation and paying a capital gains tax thereon (the basis of the stock was zero), Mrs. Campagna valued the second mortgage, as Rialto had done in 1937, at 20 per cent of its face value.

The dispute here involves plaintiffs' treatment of subsequent payments on this mortgage which were reported as follows: 20 per cent of the principal was excluded as having been previously taxed; the balance of principal plus interest, after deducting expenses, was reported as a long-term capital gain. The Commissioner, in assessing deficiencies against the Campagnas for the years at issue, determined that the mortgage payments in excess of expenses and the 20 per cent excluded should have been reported as ordinary income. Plaintiffs paid the assessments, filed claims for a refund, and when the claims were rejected, instituted this action in the District Court.

The pertinent code provisions are Sections 111, 112, 115 and 117 of the Internal Revenue Code of 1939, 26 U.S.C. §§ 111, 112, 115, 117. Read together, these sections make it clear that Mrs. Campagna's stock in Rialto was a capital asset (§ 117(a)); that the assets distributed on liquidation were to be treated as full payment in exchange for the stock (§ 115(c)); that the gain recognized from this exchange was a long-term capital gain (§ 117(a) (4)); that this gain was the amount realized minus the adjusted basis of the stock (§§ 111 (a) and (c), 112); and that the amount realized was the "sum of any money received plus the fair market value of the property (other than money) received" (§ 111(b)). The complete liquidation of Rialto was thus a taxable transaction, and if the mortgage distributed to the stockholders had a fair market value at the time of liquidation, it would have been necessary to make a final capital gains reckoning at that time. The liquidation transaction thus being close, the later payments in excess of that value would be ordinary income since they would not be made pursuant to a "sale

or exchange of a capital asset." See Gersten v. Commissioner, 9 Cir., 1959, 267 F.2d 195; Osenbach v. Commissioner, 1951, 17 T.C. 797, affirmed 4 Cir., 1952, 198 F.2d 235; O'Brien v. Commissioner, 1955, 25 T.C. 376; Chamberlin v. Commissioner, 1959, 32 T.C. 1098.

■ Plaintiffs urge here, as they unsuccessfully did below, that the liquidation of Rialto was not a closed transaction. This argument is based upon the theory that, where the property distributed on liquidation has no ascertainable fair market value, the transaction is held open for tax purposes, and subsequent payments, being treated as part of the liquidation, are taxed as capital gains. See Miller v. United States, 6 Cir., 1956, 235 F.2d 553; Westover v. Smith, 9 Cir., 1949, 173 F.2d 90; Commissioner of Internal Revenue v. Carter, 2 Cir., 1948, 170 F.2d 911; cf., Burnet v. Logan, 1931, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143. Thus, the crucial question is whether the second mortgage had an ascertainable fair market value on September 30, 1938, the date of liquidation. This, of course, is a question of fact, e. g., Andrews v. Commissioner, 2 Cir., 1930, 38 F.2d 55; Doric Apartment Co. v. Commissioner, 6 Cir., 1938, 94 F.2d 895, and the finding by the Court below that the mortgage had such a value must be upheld unless it is clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.

■ At the trial, plaintiffs introduced expert testimony to the effect that, due to the depressed and uncertain state of the real estate market in 1938, there was no market for mortgages of the type involved here. This testimony was sharply contested by experts called by the Government who testified that there was a second mortgage market in New York City in 1938, and that the mortgage dis-

tributed on the liquidation of Rialto had an ascertainable fair market value at that time. This conclusion is supported by other evidence presented to the court below. For example, the value of the building and leasehold was quite substantial, having been purchased only fifteen months before the liquidation for a total consideration of $1,049,369.[1] It is true that the leasehold was subject to a first mortgage at the time of liquidation; the balance due thereon, however was only $147,500. Moreover, although the second mortgage was on a leasehold and not the fee, no mortgage of the fee existed, and there is nothing in the record to indicate that the fee owner had reserved the right to place a mortgage that would be superior to the lease. It is also significant that up to the time of the liquidation 1481 Broadway had made all payments required by the second mortgage despite the depressed economic conditions existing at that time.[2] In addition, there was the prior admission, made in Mrs. Campagna's 1938 tax return, that the second mortgage had a fair market value of 20 per cent of its face value—the same value Rialto had reported in its 1937 corporate income tax return. Thus, appellants' evaluation affords additional support for the conclusion that the mortgage had a fair market value at the date of the liquidation. See Andrews v. Commissioner, supra; United States v. General Shoe Corp., 6 Cir., 1960, 282 F.2d 9.

Miller v. United States, 6 Cir., 1955, 235 F.2d 553, relied upon by plaintiffs, is distinguishable. In that case the Sixth Circuit held that the District Court's finding that certain second mortgage notes had a fair market value was clearly erroneous. In Miller, the notes were "highly speculative," being subordinated to first mortgage bonds to the extent of 90 per cent of the property;

1. In 1937 and 1938 the land was assessed for $2,750,000 and $2,800,000, and the building was assessed for $250,000 and $450,000.

2. An expert witness called by the Government testified that, immediately prior

to liquidation, 1481 Broadway realized $56,000 per year from rental income on the property, after payment of all prior charges, with which to make payments on the mortgage.

here, as noted earlier, the mortgage was secured by substantial collateral despite the existence of a leasehold first mortgage. In Miller, the Government, offering no expert testimony to rebut the experts called by the taxpayer, relied solely on proof that collections were made on the mortgage notes after liquidation; here, there was substantial evidence of fair market value in addition to the proof of subsequent payments. On the record as a whole the finding that the second mortgage had a fair market value at the time of the liquidation was not clearly erroneous. See Doric Apartment Co. v. Commissioner, 6 Cir., 1938, 94 F. 2d 895; Wells Amusement Co. v. Commissioner, 4 Cir., 1934, 70 F.2d 208.

Citing Gersten v. Commissioner, 9 Cir., 1959, 267 F.2d 195, plaintiffs contend that, even if the District Court were correct in finding that the second mortgage had a fair market value, it erred in not fixing the exact amount of this value. Gersten was an appeal from the Tax Court which has the duty to make a redetermination of the correct amount of the tax. See Section 6214(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 6214(a). In an action for a refund, however, the law is clear that the District Court is limited to those grounds which were raised in the claim for refund presented to the Commissioner. E. g., Real Estate-Land Title & Trust Co. v. United States, 1940, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542; Ronald Press Co. v. Shea, 2 Cir., 1940, 114 F.2d 453; Dascomb v. McCuen, 2 Cir., 1934, 73 F.2d 417. Since plaintiffs did not raise the issue as to the exact amount of the fair market value until after the trial began, the trial judge was clearly correct in refusing to make the requested determination.

Plaintiffs contend that the principle of Arrowsmith v. Commissioner, 1952, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6 is relevant to the facts here. Cases applying this principle are quite dissimilar from the instant case; they involve situations where the tax treatment of a subsequent adjustment of an earlier sale or liquidation is determined by considering the nature of the earlier transaction. See Wener v. Commissioner, 9 Cir., 1957, 242 F.2d 938; Commissioner of Internal Revenue v. Adam, Meldrum & Anderson Co., 2 Cir., 1954, 215 F.2d 163; Duveen Bros., Inc. v. Commissioner, 2 Cir., 1952, 197 F.2d 118. Here, however, there was no such subsequent adjustment; the payments actually made in the disputed tax years were at all times unconditionally required to be made by the terms of the mortgage.

The judgment is affirmed.