Lori **BARBER**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**No. C–96–4586 MHP.**

United States District Court,
N.D. California.

Jan. 31, 2000.

Robert H. Daniels, San Francisco, CA, for Lori Barber, plaintiff.

Thomas Moore, U.S. Attorney's Office, San Francisco, CA, for USA, defendant.

## MEMORANDUM AND ORDER

PATEL, Chief Judge.

On December 20, 1996, Plaintiff Lori Barber filed this action seeking a refund of income tax that she alleges was erroneously and illegally assessed and collected. This court has jurisdiction pursuant to 28 U.S.C. section 1346(a)(1). Now before the court are plaintiff's and defendant's cross motions for summary judgment.

*BACKGROUND*

Lori Barber was a licensed real estate salesperson in 1988 and 1989. Barber was professionally affiliated with her mother, Wanda McCulloh, who was a real estate broker doing business under the name Plaza Realty & Investments.

In early 1988, Barber pledged a commercial condominium that she owned as security for a $20,000 loan obtained by McCulloh. That November, Barber exchanged the condominium for a 50 percent interest in 916 Holly Avenue, Rohnert Park, California. Barber and McCulloh thus held Holly Avenue property as tenants in common. McCulloh proceeded to take out a $60,000 personal loan that was secured by 916 Holly Avenue. In May 1989, Barber and McCulloh sold 916 Holly Avenue, subject to existing trust deeds. The buyers gave Barber and McCulloh a $30,000 promissory note that was due on June 15, 1990. Barber claims that in late 1989, she learned that her mother had collected the $30,000 note for herself. According to Barber, McCulloh had informed Barber falsely that the note had been extended. McCulloh declared personal bankruptcy in late 1991 Barber

filed an unsecured nonpriority creditor's claim for $63,996, representing the funds diverted and the loans obtained by McCulloh on the jointly owned property. Barber recovered nothing in the bankruptcy proceeding.

On her 1988 income tax return, Barber reported her trade of the condominium for the Holly Avenue property as a tax-deferred "like kind" real estate exchange under 26 U.S.C. section 1031. In the instance of a property exchange, section 1031 permits the taxpayer to defer gain or loss through an adjustment to the tax cost (or "basis") of the acquired property. The "Tax–Free Exchange of Property" statement of Barber's tax return reveals that her basis in the commercial condominium was $49,137, that she gained $24,734 on the exchange, that she deferred all of this gain, and that she took a basis of $54,266 in her one-half interest in 916 Holly Avenue.

Barber's 1989 tax return shows the sale of the Holly Avenue property. Barber reported her half of the gross sales price to be $112,500. The return shows a recognized gain of $53,285,[1] which was reported as an "ordinary gain," not "capital gain." Barber chose to report the gain in full rather than under the 26 U.S.C. section 453 installment method.[2] Barber's income tax liability for 1989 was $17,940. This liability was assessed by the IRS and was not fully paid when Barber filed this action. As of February 1997, Barber had paid $15,000 toward the 1989 return, and her balance for 1989 including accrued charges amounted to $6,912.

In 1991, Barber filed a tax return reflecting the loss caused by McCulloh's purported failure to pay Barber her share of the promissory note and by Barber's alleged right to reimbursement for her disproportionate contribution and McCulloh's disproportionate borrowing. Barber re-

ported a $39,478 non-business bad debt, with an acquisition date of May 15, 1989 and a loss date of August 1, 1991. Under 26 U.S.C. section 166(d)(1)(B), the loss resulting from a worthless non-business debt is considered a short-term capital loss. The tax laws place great limitations on the use of this type of loss to offset other income items. *See* 26 U.S.C. §§ 1222, 1211(b), 1212(b). Because Barber had no offsetting capital gains or net non-capital income in 1991, she could derive no benefit that year from non-business bad debt treatment.

Barber filed a 1991 refund claim at some time before April 15, 1995. Barber asserted in her claim that her loss was "ordinary," not "capital," and that it generated an operating loss carryback under 26 U.S.C. section 172. Barber contends that the 1991 loss carried back to 1988 and 1989.

On March 27, 1996, the Internal Revenue Service (IRS) mailed to Barber a notice of disallowance of her refund claim. Accordingly, Barber now seeks relief in the amount of $1,759 for 1988, $8,324 for 1989, and $1 for 1991.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial … since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

---

**1.** This gain reflects the following calculation: $112,500 minus the $54,266 basis from the 1988 trade minus $2,500 in carpeting minus $3,900 expenses of sale.

**2.** The installment method applies automatically unless a taxpayer affirmatively elects out in a timely filed return.

The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [its] own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party discharges its burden by showing that the nonmoving party has not disclosed the existence of any "significant probative evidence tending to support the complaint." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

The court's function on a motion for summary judgment is not to make credibility determinations. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *See T.W. Elec. Serv.*, 809 F.2d at 631.

## DISCUSSION

### I. *Jurisdictional Issues*

The United States "as sovereign, 'is immune from suit, save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Under 28 U.S.C. section 1346(a)(1), sovereign immunity is waived for tax refund suits provided that a plaintiff taxpayer meet certain jurisdictional requirements.

### A. *Cause of Action for Refund of 1989 Income Taxes*

The Supreme Court has construed section 1346(a)(1) to mandate that the subject tax liability be paid in full before an income tax refund suit can be maintained in federal district court. *See Flora v. United States*, 362 U.S. 145, 176, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Barber did not pay her 1989 taxes in full. However, she draws support from established exceptions to section 1346(a)(1) as well as from Ninth Circuit precedent and statutory law in arguing that the present facts do not trigger the *Flora* full-payment requirement vis a vis the 1989 return. The court is not persuaded that plaintiff is in a position to elude the *Flora* rule.

### i. *Exceptions to 1346(a)*

There are a few limited circumstances in which taxpayer refund actions can proceed in district court despite seemingly unmet jurisdictional requirements. *See United States v. Forma*, 42 F.3d 759, 767 (2d Cir.1994) (citing *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Freeman v. United States*, 265 F.2d 66 (9th Cir.1959); and *United States v. Kales*, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941)). The *Bull* doctrine of "equitable recoupment" allows the taxpayer to recover on an otherwise time-barred claim when the government taxes the same transaction twice under different sections of the tax code. *See Bull*, 295 U.S. at 259–63, 55 S.Ct. 695; *see also United States v. Dalm*, 494 U.S. 596, 605 n. 5, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (noting that a claim of equitable recoupment will lie only in the instance in which the government has taxed a single transaction under two inconsistent theories). The *Freeman* court allowed a delayed application of the full payment rule when the government initiated an action for payment before a district court. *See Freeman*, 265 F.2d at 69. Under *Kales*, a suit will not be dismissed for failure to file a timely administrative claim when a taxpayer makes a

satisfactory informal claim within the statutory time period. *See Kales,* 314 U.S. at 194, 62 S.Ct. 214. Barber's situation does not trigger any of these exceptions to the jurisdictional requirements of section 1346(a).

ii. *Shipley*

Barber analogizes her action to the situation in *Shipley v. United States,* 608 F.2d 770 (9th Cir.1979). The plaintiffs in *Shipley* received money in 1967 from a donor. They regarded this money as a gift and did not report it as income on their 1967 tax return. In 1971, the Shipleys were compelled by a state court judgment to repay the money to the estate of the donor. The Internal Revenue Service (IRS) subsequently classified the 1967 gift as ordinary income and thus claimed a deficiency in income taxes for 1967. The Shipleys opposed the deficiency assessment in tax court and filed a federal district court action asserting that if they were found to owe the 1967 tax, then they were entitled under 26 U.S.C. section 1341 to a credit for 1971, the year that they restored the gift. *Id.* at 771–72. The Ninth Circuit found the case to be distinguishable from *Flora* because the Shipleys paid all of the taxes for the year in which the refund was claimed. Barber contends that like the Shipleys, she had no unpaid tax in the year generating her refund claim, namely 1991.

Defendant cites to a Third Circuit decision and an unpublished Fourth Circuit opinion in its argument that Barber cannot seek a refund for the year in which she has outstanding unpaid assessments, namely 1989. *See Koss v. United States,* 69 F.3d 705, 708 (3d Cir.1995); *Snyder v. United States,* 539 F.2d 706, 1976 WL 23945 (4th Cir.1976) (unpublished). According to defendant, these cases mandate that the full-payment rule would apply to Barber's 1989 claim even if it is based upon a subsequent loss carryback.

Defendant does not attempt to reconcile *Shipley* with these cases. A key factor that differentiates *Koss* and *Snyder* from *Shipley* is that *Shipley* addresses refund requests filed under 26 U.S.C. section 1341. This statute covers taxpayers who receive funds under an apparent claim of right in one year and are forced to return those funds in a later year when it becomes clear that they do not have an unrestricted right to the funds. Section 1341 does not permit the taxpayer to reopen the return for the year the funds were received. Rather, it makes the remedy available only in the year of restoration. The refund year under section 1341 is the loss year and not the carryback year. *See* 26 U.S.C. § 1341; *Shipley,* 539 at 773. Thus, under section 1341, the year to which the full-payment rule must apply is the year in which the taxpayer gave back the funds. By contrast, Barber is presently seeking a refund for the carryback year, i.e.1989.

iii. *Statutes*

The statutory portion of plaintiff's argument is rooted in special procedural rules that apply to carrybacks. Under 26 U.S.C. section 172, a taxpayer may take a deduction for the loss year in an amount equal to the "net operating loss carryovers" to such year plus the "net operating loss carrybacks" to such year. 26 U.S.C. § 172(a).[3] "The significant feature of a carry-back is that it permits an adjustment of an earlier liability upon the basis of subsequent events. It contemplates that the initial tax obligation was not incorrectly or mistakenly imposed but was actually due, but that an adjustment may be made upon the basis of the taxpayer's gain or loss in the succeeding year or years." *Bulova Watch Co. v. United States,* 365 U.S. 753, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961).

Loss carrybacks are subject to the procedural rules set out in 26 U.S.C section 6511. Section 6511 exempts claims based

---

**3.** The carryback period at issue in the present action is three years. Section 172 was amended prospectively in 1997 to reduce the allowable period from three to two years.

on loss carrybacks from the general requirements for refund claims. According to Barber, section 6511(d)(2)(B)(I) explicitly overrides any other law that would prevent a claim. This section reads:

> If the allowance of a credit or refund of an overpayment of tax attributable to a net operating loss carryback or a capital loss carryback is otherwise prevented by the operation of any law or rule of law other than section 7122 (relating to compromises), such credit or refund may be allowed or made, if claim therefor is filed within the [requisite] time period.

As defendant points out, however, this section does not nullify the *Flora* full-payment requirement because it applies to the filing of refund claims and not law suits.

Plaintiff also relies on 26 U.S.C. sections 6601(d)(1) and 6611(f)(1), which establish the rules for calculating interest on underpayments and overpayments resulting from carrybacks. These rules codify the principle announced in *Manning v. Seeley Tube & Box Co. of New Jersey*, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950), that a taxpayer must pay interest on a deficiency until the deficiency is paid or otherwise abated. It is unclear exactly how sections 6601(d)(1) and 6611(f)(1) relate to plaintiff's line of reasoning. Plaintiff cites *Seeley Tube* for the additional proposition that because carrybacks abate the original liability, a taxpayer who did not pay the original liability in full may nonetheless have overpaid once the amount due has been adjusted for the carryback. *Seeley Tube* is inapposite to the present action, however, because the IRS abated the alleged deficiency from the carryback year in that case. *See Seeley Tube*, 338 U.S. at 565, 70 S.Ct. 386. Thus, the only issue before the court was whether interest was due up to the time of abatement. It appears here that plaintiff is attempting to put the merits cart before the jurisdiction horse.

■ For the foregoing reasons, the court holds that it cannot exercise jurisdiction over plaintiff's cause of action for a refund of her 1989 taxes. Because plaintiff paid her 1988 and 1991 taxes in full, however, the court must proceed to consider the viability of her causes of action relating to those years.

### B. Jurisdiction Over Plaintiff's Section 453(b) and Theft Deduction Claims

Barber asserts three legal theories for her asserted right to a refund: the first is based on the *Arrowsmith* doctrine; the second is grounded in 26 U.S.C. section 453(b); and the third pertains to the tax standard for theft deductions.

Defendant contends that plaintiff is barred from raising the latter two theories because she did not include them in her 1995 refund claim. The Treasury Regulations state that "[t]he claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas.Reg. § 301.6402–2(b)(1). Filing pursuant to this rule is a jurisdictional prerequisite. *See Boyd v. United States*, 762 F.2d 1369, 1371 (9th Cir.1985) (citing *Martinez v. United States*, 595 F.2d 1147, 1148 (9th Cir.1979) (per curium); *Bear Valley Mutual Water Co. v. Riddell*, 493 F.2d 948, 951 (9th Cir. 1974)). A taxpayer seeking a refund from the IRS is not required to provide detailed explanations of her legal theories, but "the IRS is entitled to take the refund claim at face value and examine only the points to which it directs attention." *Id.* (citations omitted). Accordingly, if the claim "on its face does not call for investigation of a question, the taxpayer may not later raise that question in a refund suit." *Id.* at 1372.

■ Barber's 1995 refund claim articulates only one legal theory. It states that "the authority for treating the loss as ordinary is the Supreme Court's *Arrowsmith* decision and its progeny." Complt.Exh. A (Daniels Letter); *see also Arrowsmith v. Commissioner*, 344 U.S. 6, 73 S.Ct. 71, 97

L.Ed. 6 (1952). Nowhere does the claim allude to the possibility that section 453(b) treatment might apply. *See* Complt.Exh. A. The court concurs with defendant that plaintiff may not raise this ground for recovery. The claim does, however, refer to McCulloh's alleged misappropriation of the promissory note. *See* Complt.Exh. A (Barber Dec.). The court finds that this reference is sufficient to have directed the attention of the IRS toward the possibility that the tax standard for theft deductions might apply.

The court thus considers the *Arrowsmith* doctrine and the tax standard for theft deductions as they pertain to Barber's 1988 and 1991 causes of action.

## II. *The Arrowsmith Doctrine*

Under the *Arrowsmith* doctrine, when there is a gain in one year that is closely related to a loss in a later year, the gain and loss are treated as two aspects of the same transaction. *See Arrowsmith*, 344 U.S. at 8, 73 S.Ct. 71. Plaintiff contends in her moving papers that her 1989 gain and her 1991 loss are two components of the same transaction pursuant to *Arrowsmith*. According to Barber, the gain is the amount she was entitled to obtain from the sale of 916 Holly Avenue and the loss lay in her discovery that she would not receive her rightful share of the proceeds. Barber reasons that the close link between the gain and the loss mandates that they be treated alike. Since she reported the gain as a non-capital ordinary gain, she maintains that the loss should be characterized as a non-capital ordinary loss.

■ In the hearing on this motion, plaintiff asserted that even if this court did not exercise jurisdiction over the 1989 cause of action, it should apply the *Arrowsmith* doctrine to the 1988 cause of action. Plaintiff has not articulated a clear theory about the relationship between the 1991 loss and the 1988 gain. She appears to group the 1988 purchase with the 1989 sale of 916 Holly Avenue because part of her ultimate loss was allegedly related to

the fact that her 1988 exchange had financed a disproportionate share of the Holly Avenue purchase. In broad terms, plaintiff seems to be arguing that her 1991 loss is a component of her 1989 gain, which is a component of her 1988 gain. As set forth below, the court concludes that the 1991 loss and the 1989 gain are not linked under *Arrowsmith*. Therefore, by implication, the 1991 loss and the 1998 gain also fail to qualify as two aspects of the same transaction.

In *Arrowsmith*, two stockholders reported profit from a corporate liquidation as capital gain. Years after the liquidation, these former stockholders were forced to pay a judgment rendered against the old corporation because they were transferees of the assets. The court held that the payment must be treated as a capital loss because it viewed the payment as part of the liquidation transaction. *See id.* at 8–9, 73 S.Ct. 71. The Court followed *Arrowsmith* in *United States v. Skelly Oil*, 394 U.S. 678, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969). *Skelly Oil* involved a natural gas producer that overcharged its customers over the course of several years. The company was required to repay to the customers sums that had only been subject to a 72.5 percent tax when received. The court ruled that in order to mirror the original transactions, the deduction allowable in the year of repayment would be reduced to 72.5 percent. *See id.* at 684–86, 89 S.Ct. 1379.

The Fifth Circuit articulated a narrow interpretation of the *Arrowsmith* doctrine: "[It] would control a situation where the taxpayer, having received money in one capacity, was required in that same capacity to repay that money to the same person who made the payment." *Kimbell v. United States*, 490 F.2d 203 (1974); *see also Anderson v. Commissioner*, 480 F.2d 1304, 1306–07 (7th Cir.1973) (applying *Arrowsmith* when a taxpayer employee surrendered to his employer profits earned from short-swing trading in the company's stock pursuant to section 16(b) of the Securities

and Exchange Act of 1934, 15 U.S.C. § 78p(b)); *Mitchell v. Commissioner,* 428 F.2d 259, 263 (6th Cir.1970) (same).

Defendant contends that plaintiff is not entitled to relief under *Arrowsmith* because her sale of 916 Holly Avenue was a "closed transaction." In a closed transaction, the fair market value of the property is ascertainable at the time the transaction is reported, and the gain or loss is thus determined in the year of a sale or exchange. *See, e.g., Campagna v. United States,* 290 F.2d 682, 684 (2d Cir.1961) (citing *Westover v. Smith,* 173 F.2d 90 (9th Cir.1949)). Defendant cites several cases holding that the *Arrowsmith* rationale does not extend to activities that postdate a closed transaction when those activities are related to the closed transaction but do not serve to adjust the closed transaction. *See, e.g., Waring v. Commissioner,* 27 T.C.M. (CCH) 604 (1968) (finding that a license agreement was a closed transaction and that royalties later garnered in excess of the agreed-upon value at the time of the closed transaction were not part of the same transaction for taxation purposes); *Campagna,* 290 F.2d at 685 (finding that a liquidation was a closed transaction, that the value of the mortgage was ascertainable at the time of the closed transaction, and that the payment of the obligation was not part of the same transaction for taxation purposes). *Cf. Wener v. Commissioner,* 242 F.2d 938, 942–43 (9th Cir.1957) (noting that a payment or discharge of a debt is not considered part of the initial sale or exchange for tax purposes).

The court concurs with defendant that *Arrowsmith* and *Skelly Oil* are inapplicable here. Those cases addressed a subsequent adjustment to an earlier transaction. Contrary to Barber's assertion, the present action does not entail two components of the same exchange. Barber's inability to collect the promissory note proceeds from McCulloh in 1991 was entirely distinct from the 1989 sale of the Holly Avenue property. Barber's 1991 loss did not arise out of a retooling of her 1989 con-tract with the purchasers of 916 Holly Avenue. She was not forced to make a payment relating to her prior ownership or to refund a portion of the sales price. Rather, her loss resulted from her inability to extract her share of the proceeds from her mother. Because the 1991 loss was not part-and-parcel of the 1989 gain and because Barber appears to group the 1989 gain with the 1988 gain, the court concludes that *Arrowsmith* is inapplicable to Barber's cause of action for a refund of her 1988 taxes.

### III. *Tax Standard for Theft Deductions*

Plaintiff argues that she is also entitled to ordinary loss treatment and a consequent carryback because the disposition of the Holly Avenue property consisted of a theft rather than a "sale or exchange." *See* 26 U.S.C. § 1222 (requiring a "sale or exchange" in order for there to be a capital loss). Under 26 U.S.C. section 165(e), a loss arising from a theft is treated as sustained during the taxable year in which the taxpayer discovers the loss. Barber claims that she learned of her mother's deception regarding the promissory note in 1989. Because this court does not have jurisdiction over Barber's cause of action for a 1989 refund, the court is not in a position to consider her legal theory pertaining to the tax standard for theft deductions.

### CONCLUSION

For the reasons set forth above, the court hereby GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for summary judgment.